UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:21-cv-9-MOC

| | |
|---|---|
| NICKIE OSBORNE, | ) |
| Plaintiff, | ) |
| vs. | ) **ORDER** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary Judgment. (Doc. Nos. 16, 18). Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.   Administrative History**

Plaintiff Nickie Osborne brought this action under section 205(g) of the Social Security Act (Act), 42 U.S.C. § 405(g), to obtain judicial review of the Acting Commissioner's final decision denying his application for a period of disability and disability insurance benefits ("DIB") under title II of the Act, 42 U.S.C. §§ 401-433. (Tr. 15–33).

Plaintiff applied for benefits on or about July 8, 2015, claiming that he became disabled on December 1, 2013. (Tr. 15, 340–43). His application was denied initially and upon reconsideration. (Tr. 181–89, 191–98). An ALJ held an administrative hearing on January 3, 2018, and Plaintiff attended that hearing with counsel. (Tr. 69–100). On February 2, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 149–68). By order dated January 16, 2020, the Appeals Council remanded Plaintiff's case to the

ALJ for further proceedings. (Tr. 169–72).

On June 9, 2020, a different ALJ conducted a hearing in Plaintiff's case and Plaintiff again attended with counsel. (Tr. 42–68). On July 8, 2020, that ALJ issued a decision that Plaintiff was not disabled within the meaning of the Act. (Tr. 15–33). On December 2, 2020, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's July 8, 2020, decision the Commissioner's final decision in this case. (Tr. 1–6). Plaintiff then filed this civil action for judicial review of the Commissioner's final decision. The Commissioner has answered Plaintiff's Complaint, and this case is now before the Court for disposition of the parties' cross-motions for summary judgment.

## II. Factual Background

The Court finds that the ALJ's findings of fact are supported by substantial evidence and therefore adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was

supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

### IV. Substantial Evidence

#### a. Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether the Court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. For the following reasons, the Court finds that the ALJ's decision was supported by substantial evidence.

#### b. Sequential Evaluation

The Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2). To qualify for DIB under Title II of the Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be

under retirement age, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

-4-

Case 5:21-cv-00009-MOC   Document 21   Filed 12/13/21   Page 4 of 14

### c. The Administrative Decision

In rendering her decision, the ALJ applied the five-step sequential evaluation process set forth in the regulations for evaluating disability claims. See 20 C.F.R. § 404.1520(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24 (2003). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between the period he alleged his disability began, December 1, 2013, and the date he last had insured status under the Act, December 31, 2017.[1] (Tr. 17). At step two, the ALJ found that Plaintiff had the following severe impairments: anxiety; depression; bipolar II disorder; borderline personality disorder; post-traumatic stress disorder (PTSD); type 2 diabetes mellitus; hypertension; neuropathy; cervical degenerative disc disease, arthritis/osteoarthritis, ischemic coronary artery disease, and obesity. (Tr. 17–18). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 18–20).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity to perform a limited range of light work, subject to numerous additional restrictions: occasional climbing, balancing, stooping, kneeling, crawling, and crouching. He needed to avoid concentrated exposure to workplace hazards. The claimant could perform unskilled work and carry out routine, repetitive tasks but was precluded from work requiring a production rate or demand pace. He was able to sustain attention and concentration for 2 hours at a time. The claimant was able to stand and/or walk up to 4 hours total, sit up to 6 hours, and must be allowed to alternate between sitting and standing up to two times each hour.

---

[1] Under sections 216(i) and 223 of the Act, 42 U.S.C. §§ 416(i), 423, Plaintiff can only become entitled to title II benefits if he can establish that he became disabled on or before the date he last had insured status under the Act.

He was limited to occasional use of the bilateral lower extremity for pushing, pulling, and operating foot controls. The claimant was limited to frequent but not continuous use of the bilateral upper extremity for pushing, pulling, and operating hand controls, reaching in all directions, including overhead, as well as fine and gross manipulations. The claimant needed to avoid environments dealing with crisis situations, complex decision making, or constant changes in a routin[e] setting. He was able to interact frequently, but not continuously with supervisors, occasionally with co-workers but can have no public contact or interaction. The claimant needed 1 to 2 additional 5-minute rest breaks. (Tr. 20–21). The ALJ explained the residual functional capacity finding in detail. (Tr. 21–31).

At step four, the ALJ found that Plaintiff was no longer capable of performing his past relevant work. (Tr. 31–32). At step five, the ALJ found, based on Plaintiff's age, education, work experience, and residual functional capacity, as well as testimony from a vocational expert ("VE"), that Plaintiff could perform jobs existing in significant numbers in the national economy. (Tr. 32–33). As a result, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. 33).

**V.      Discussion**

Plaintiff presents two arguments before this Court: (1) the SSA's decision denying his disability benefits claim was constitutionally defective because the Social Security Act provision limiting the President's authority to remove the Presidentially appointed, Senate-confirmed Commissioner of Social Security without good cause, 42 U.S.C. § 902(a)(3), violates the separation of powers; and (2) the ALJ insufficiently explained the residual capacity finding, including the restriction allowing for additional breaks and the statement that Plaintiff could sustain the attention necessary to remain on task for two hours at a time.

**A. Plaintiff's Separation of Powers Argument**

Plaintiff first argues that SSA's decision denying his disability benefits claim was constitutionally defective because the Social Security Act provision that limits the President's authority to remove the Presidentially appointed, Senate-confirmed Commissioner of Social Security without good cause, 42 U.S.C. § 902(a)(3), violates the separation of powers.

In Collins v. Yellen, 141 S. Ct. 1761 (2021), the Supreme Court recently held that where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction caused his alleged harm. The Collins Court reasoned that the relevant agency officials were "properly appointed" pursuant to a statute that exhibited "no constitutional defect in the ... method of appointment" and that "the unlawfulness of [a] removal provision" does not strip [an official] of the power to undertake the other responsibilities of his office[.]" The Court continued that "there is no reason to regard any of the actions taken" by the agency during this period "as void." Id. at 1787, 1788 n.23.

Here, as in Collins, Plaintiff based his constitutional challenge only on the relevant removal restriction, not on the propriety of the Commissioner's appointment. He also offers no evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of his application for disability benefits. Plaintiff simply argues that all actions taken by the Commissioner – and in turn his appointed ALJ's – are void due to the unconstitutional removal provision. However, Collins expressly rejected this view. Thus, the final decision of the ALJ is not constitutionally defective.

**B. Defendant's contention that the ALJ insufficiently explained the residual capacity finding, including the restriction allowing for additional breaks and the statement**

-7-

Case 5:21-cv-00009-MOC   Document 21   Filed 12/13/21   Page 7 of 14

**that Plaintiff could sustain the attention necessary to remain on task for two hours at a time.**

Next, Plaintiff argues that the ALJ insufficiently explained the residual capacity finding. In particular, he claims that the ALJ did not provide the explanation necessary to sustain review of the finding that Plaintiff would require additional breaks throughout the workday. He also claims that the ALJ did not account for Plaintiff's moderate limitations in concentration, persistence, or pace. Neither claim has merit. (Pl. Br. 17–22).

An individual's residual functional capacity is the most he can do despite the limitations caused by his physical and mental impairments. 20 C.F.R. § 404.1545(a); SSR 96-8p, 1996 WL 374184, at *1–2 (S.S.A. July 2, 1996). An ALJ must assess a claimant's work-related abilities (i.e., a claimant's residual functional capacity) on a "function-by-function" basis, but the claimant bears the burden of providing evidence establishing the degree to which his impairments limit his residual functional capacity. 20 C.F.R. § 404.1512, 404.1545(a)(3); SSR 96-8p, 1996 WL 374184.

In making the residual functional capacity assessment, the ALJ must consider the functional limitations resulting from the claimant's medically determinable impairments. SSR 96-8p, 1996 WL 374184, at *2. But the ALJ is not obliged to precisely mirror any particular piece of evidence, or even to discuss every piece of evidence in the record. See Reid v. Comm'r of Soc. Sec'y, 769 F.3d 861, 865 (4th Cir. 2014) (citing 42 U.S.C. § 405(b)(1) and affirming an ALJ decision that contained a discussion of "the whole record," instead of a description of every piece of evidence in the record); Felton-Miller v. Astrue, 459 F. App'x 226, 230–31 (4th Cir. 2011) (explaining that an ALJ should base an individual's residual functional capacity on all available evidence); Griffin v. Comm'r, Soc. Sec. Admin., No. SAG-16-274, 2017 WL 432678,

at *3 (D. Md. Jan. 31, 2017 ("ALJ need not parrot a single medical opinion, or even assign 'great weight'to any opinions, in determining [residual functional capacity]").

Rather, the ALJ must review and synthesize the record in its entirety and make findings about what the evidence shows. See 20 C.F.R. § 404.1520b ("After we review all of the evidence relevant to your claim we make findings about what the evidence shows."). Moreover, a reviewing Court must read the ALJ's decision as a whole, meaning the decision should be affirmed even if the supporting discussion for a particular fact is found in a section of the decision covering some other aspect of the sequential review process. Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. Dec. 14, 2011) (affirming ALJ decision on Listings, in part, because the rest of the ALJ's decision made clear the reasoning for the conclusion regarding the Listings); Keene v. Berryhill, 732 F. App'x 174, 177 (4th Cir. May 2, 2018) (reading an ALJ decision as a whole and affirming based on the fact that the ALJ stated a coherent basis for conclusions).

**1. The ALJ provided the explanatory discussion necessary to support the limitation involving rest breaks.**

Plaintiff argues that the ALJ did not sufficiently explain why she included in the residual functional capacity finding a statement that Plaintiff would need to take one or two five-minute rest breaks every hour. (Pl. Br. 18). The Court disagrees. The ALJ explained the residual functional capacity finding in detail and her decision. Other than generalized statements regarding the record, Plaintiff provides no support for this argument, making no showing as to why, presumably, the ALJ should have found he was more limited. Because he has not shown prejudice, Plaintiff cannot prevail. See Shinseki v. Sanders, 556 U.S. 396, 407 (2009) (requiring the party challenging an administrative decision to prove that an error harmed their case); Garner v. Astrue, 436 F. App'x 224, 225, n* (4th Cir. 2011) (stating that the Shinseki harmless error

analysis applies to Social Security cases); Bishop v. Comm'r of Soc. Sec'y, 583 F. App'x 65, 67 (4th Cir. 2014) ("[A]ny error is reviewed under the harmless error doctrine."); Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (affirming despite error because ALJ "would have reached the same result notwithstanding his initial error").

Moreover, the ALJ based her decision on the evidence in the record. She made numerous references to treatment notes and examination findings. (Tr. 21–31). For example, the ALJ discussed Dr. Rondell Smith's consultative examination findings, which involved Plaintiff's reports of constant and throbbing lower extremity pain and findings such as reduced range of motion in the hip, grossly normal muscle strength, bulk, and tone, and an x-ray showing no acute findings. (Tr. 23, 713–19, 720). The ALJ further discussed relatively "unremarkable" findings from Dr. David W. Cash, which included statements that Plaintiff had normal gait, station, and posture. (Tr. 23, 560–75, 991, 995, 1000, 1005, 1010, 1014–15, 1070, 1072). The ALJ discussed Dr. Cash's statements that, with treatment, Plaintiff was functioning well with good energy levels and sleep and his statement that treatment was "effective." (Tr. 24, 862). She also referenced Plaintiff's hearing testimony, in which he discussed being unable to sit for more than 30 minutes at a time. (Tr. 21, 29). But she also contrasted that evidence with inconsistent statements Plaintiff made to a consultative examiner that he watched television for as much as 14 to 16 hours per day. (Tr. 29, 713).

This discussion undermines any suggestion that the ALJ did not support her residual functional capacity finding with the required explanatory discussion. In light of that discussion, and in the absence of evidence showing that the residual functional capacity finding should have allowed for more or more frequent breaks, the ALJ's decision must be affirmed.

**2. The ALJ accounted for moderate difficulties in concentration, persistence, or pace by limiting Plaintiff to work in two-hour increments.**

Plaintiff also contends that the ALJ's decision did not sufficiently account for moderate limitations in his ability to maintain concentration, persistence, or pace. (Pl. Br. 10–16). This argument fails because it ignores the plain language of the ALJ's decision, which includes all appropriate limitations as well as the supporting discussion necessary to understand and evaluate the ALJ's conclusions. In its published decision in Shinaberry v. Saul, the Fourth Circuit confirmed that the inquiry into a claimant's moderate limitations in concentration, persistence, or pace is "case-by-case." 952 F.3d 115, 121 (4th Cir. 2020) (quoting Biestek, 139 S. Ct. at 1157). There are no "categorical" or "per se" rules that that certain limitations must be included in a residual functional capacity finding to account for specific impairments. Id. As a result, the Fourth Circuit's case-by-case approach examines the ALJ's decision, reviews the rationale provided in support of the ALJ's conclusions, and affirms the ALJ's decision when the ALJ has explained and supported the residual functional capacity finding by discussing and explaining substantial evidence in the record. Id. at 121–22.

"[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, or pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011); see also Mascio, 780 F.3d at 638 (citing Winschel). Accordingly, the Fourth Circuit affirmed in Shinaberry, where the ALJ decision discussed medical opinion evidence from State agency consultants and explained why the residual functional capacity finding—limiting the claimant to simple, routine, repetitive tasks—accounted for the claimant's impairments and

limitations. Shinaberry, 92 F.3d at 122. While an ALJ "cannot summarily 'account for a claimant's limitations in concentration, persistence, or pace by restricting the hypothetical to simple, routine tasks or unskilled work,'" where the ALJ provided the appropriate explanatory discussion in support of the residual functional capacity finding she established in her decision, the decision should be affirmed. Id. (quoting Mascio, 80 F.3d at 638).

Here, the ALJ included specific limitations on Plaintiff's ability to remain on task, stating that both that he could "sustain attention and concentration for two hours at a time," and in addition, that he would require one to two additional five-minute breaks throughout the workday. (Tr. 20). This alone defeats Plaintiff's claim because it demonstrates that the ALJ addressed and accounted for Plaintiff's ability to remain on task. But the ALJ included additional limitations that relate to Plaintiff's ability to remain on task. For example, she limited Plaintiff to unskilled work and routine, repetitive tasks. (Tr. 17). Plaintiff does not address those residual functional capacity limitations in more than conclusory fashion. (Pl. Br. 18). In light of the specific language directly addressing the limitations Plaintiff claims to have been ignored, Plaintiff's motion is denied.

Even if the ALJ's specific language had not accounted for Plaintiff's limitations, there would still be no basis for disturbing the ALJ's decision because the ALJ supplied the narrative discussion necessary to facilitate this Court's review. (Pl. Br. 19–22). The ALJ discussed numerous pieces of evidence in support of his residual functional capacity finding, among them medical records, treatment notes, Plaintiff's subjective claims and statements, and medical opinion evidence. For example, the ALJ discussed mental status examination findings, which consistently made no reference to work-related difficulties with concentration, even though Plaintiff's was noted as depressed or "sedated" on some occasions. (Tr. 23, 24; see, e.g., Tr. 734,

742, 749, 751–52, 755, 757, 759, 761, 763, 765, 767). The ALJ also discussed later records from Daymark Recovery Services, which included grossly normal, or only mildly abnormal, mental status examination findings. (Tr. 23, 24; see, e.g., Tr. 808, 811, 898, 901, 991, 995, 1000).

The ALJ further discussed opinion evidence. This included Dr. Carla Duszlak's opinion, which stated that Plaintiff could "perform simple and repetitive tasks, but cannot focus very well, and therefore would have trouble with detailed tasks." (Tr. 30, 622). This also included evidence from a State agency source, which indicated that, despite his impairments, Plaintiff retained "the ability to maintain concentration and attention for an adequate period to complete short and simple tasks." (Tr. 31, 144).

As the examination findings and medical opinions discussed in the ALJ's decision make clear, the evidence does not support a greater degree of limitation or limitations other than those the ALJ already included and discussed. (Tr. 31). Accordingly, Plaintiff's motion is denied and the ALJ's decision is affirmed.

## VI.     Conclusion

The Court has carefully reviewed the decision of the ALJ, the transcript of the proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson, 402 U.S. at 401, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED;**

(2) Plaintiff's Motion for Summary Judgment, (Doc. No. 16) is **DENIED;**

(3) The Commissioner's Motion for Summary Judgment, (Doc. No. 18) is **GRANTED;** and

(4) This action is **DISMISSED.**


Signed: December 13, 2021

Max O. Cogburn Jr.
United States District Judge